**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Juan Carlos JAUREGUI, Appellee.**

**No. 01–04–00554–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 4, 2005.

Elvis G. Schulze, Kevin M. Givens, Austin, TX, for Appellant.

Steve Gonzalez, Alvin, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

TIM TAFT, Justice.

The Texas Department of Public Safety ("the DPS") appeals an order from the county court, affirming an administrative law judge's decision denying the DPS's petition to suspend appellee, Juan Carlos Jauregui's, driver's license. We address whether an officer must simultaneously give oral and written warnings of the consequences of refusing a breath test after an arrest for driving while intoxicated ("DWI"). We reverse the judgment and remand the cause with instructions.

### Background

On September 14, 2003, Jauregui was arrested for DWI after Officer Carroll of the Pearland Police Department observed Jauregui's vehicle swerve out of its lane. Officer Carroll pulled Jauregui over and, after detecting a strong odor of alcohol emanating from the vehicle, asked Jauregui to exit his vehicle. As Jauregui stumbled and exited his vehicle, Officer Carroll noticed a moderate odor of alcoholic beverage emanating from Jauregui's breath and

decided to administer standard field-sobriety tests. Officer Carroll administered several field tests, including a horizontal-nystagmus-gaze test, a walk-and-turn test, and a one-leg-stand test. Jauregui failed to perform any of these tests satisfactorily, and Officer Carroll arrested him for DWI. Once inside his patrol car, Officer Carroll read Jauregui statutory warnings regarding his refusal to provide a breath specimen (form DIC–24). Jauregui was not provided a written copy of the warnings at that time.

Officer Carroll transported Jauregui to the Pearland Police Station, where he provided Jauregui a written set of the DIC–24 warnings, which Jauregui refused to sign. Officer Carroll then provided to Jauregui a notice of suspension of his driver's license (form DIC–25).

On December 3, 2003, at Jauregui's request, an administrative law judge ("ALJ") conducted a hearing on the suspension of his driver's license and found as follows: [1]

> Having considered the evidence, the Judge finds the following issues/element(s) were not proven by a preponderance of the evidence: that the Defendant was properly given the Statutory

Warnings in accordance with state requirement. Officer Carroll, the officer who executed the Statutory Warnings, testified that he did give the Defendant a copy of the warnings to read alone. He stated that he read the document to the Defendant in the vehicle, but it was unclear whether the warnings were read and [sic] second time with the Defendant being provided with a copy. The department failed to meet their burden.[2]

> Based on the foregoing, the Judge concludes the evidence presented in this cause was insufficient to establish all the issues/elements set out in Tex. Transp. Code Ann. § 524.035 or 724.042 by a preponderance of the evidence.

Based upon these conclusions, the ALJ denied the DPS's petition to suspend Jauregui's driver's license. The DPS sought judicial review of that determination in the county court. The county court affirmed the ALJ's decision.

## Standard of Review

■ We consider in this appeal whether the administrative findings are affected by an error of law.[3] This Court's

---

1. At the hearing, the testimony included only that of Officer Carroll. Jauregui's argument against suspension of his driver's license revolved around the assertion that Officer Carroll lacked probable cause to stop him for the traffic offense of failure to maintain a single, marked lane.

2. The ALJ's finding seems to imply that, if the warnings had been administered orally and in writing, the circumstances would be analogous to those in O'Keefe, discussed below at pages —— through ——, in which the warnings were deemed sufficient.

3. Despite the fact that the Administrative Procedure Act provides that appeals from the trial court's judgment are taken "in the manner provided for civil actions generally," the appellate courts habitually review the agency order itself, not the trial court's judgment.

TEX. GOV'T CODE ANN. § 2001.901 (Vernon 1997); see e.g., R.R. Comm'n of Tex. v. Torch Operating, 912 S.W.2d 790, 792 (Tex.1995) ("We next decide whether this particular decision by the agency was supported by substantial evidence in the record."); Bd. of Law Exam'rs v. Stevens, 868 S.W.2d 773, 778 (Tex. 1994) ("Our duty, like that of the courts below, in reviewing the BLE's decision is to determine whether substantial evidence supports it."); R.R. Comm'n of Tex. v. Cont'l Bus. Sys., 616 S.W.2d 179, 182 (Tex.1981) ("The question that this court must answer is whether the findings of the Commission about convenience and necessity are reasonably supported by substantial evidence.").

However, in Texas Department of Public Safety v. Whitefield, the Waco Court of Appeals held that section 2001.901 does not apply to chapter 524 driver's license suspen-

review of the trial court's determination is undertaken *de novo*. *Raesner v. Tex. Dep't of Pub. Safety*, 982 S.W.2d 131, 132 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). We review questions of law without affording any deference to the trial court's finding. *Tex. Dep't of Pub. Safety v. Cuellar*, 58 S.W.3d 781, 784 (Tex.App.-San Antonio 2001, no pet.). To resolve this issue, the proper construction of Texas Transportation Code section 724.015, we decide an issue of law; thus we review *de novo*. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 774 (Tex.App.-Austin 1998, no pet.)

### Statutory Warnings

■ In its sole issue, the DPS contends that the trial court erred in affirming the ALJ's decision because the statutory warnings regarding Jauregui's refusal to provide a breath specimen were not required to be given, both orally and in writing, contemporaneously.

Section 724.015 of the Texas Transportation Code provides that "[b]efore requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing" of the statutory warnings provided under section 724.015, which include the consequences of refusing to submit to the test. TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp.2004–2005). The purpose behind section 724.015 is "to ensure that a person who refuses to give a requested specimen does so with a full understanding of the consequences." *Nebes v. State*, 743 S.W.2d 729, 730 (Tex. App.-Houston [1st Dist.] 1987, no pet.).

Several cases exist involving an officer's giving the required oral warnings, but failing to give the statutory written warnings before requesting a person to submit to the taking of a specimen. *See Schafer v. sions.* 59 S.W.3d 294, 295 (Tex.App.-Waco

*State*, 95 S.W.3d 452, 455–57 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). In both *Rowland v. State*, 983 S.W.2d 58 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd), and *Jessup v. State*, 935 S.W.2d 508 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd), police officers gave the appellants only an oral warning before asking them to provide breath specimens. *Rowland*, 983 S.W.2d at 60; *Jessup*, 935 S.W.2d at 509–511. After the appellants refused to give specimens, the officers gave them the written warnings, which the appellants signed, acknowledging that they understood them. *Rowland*, 983 S.W.2d at 60; *Jessup*, 935 S.W.2d at 509–511. The appellate courts held that the trial courts did not err in admitting evidence of the appellants' refusal to take the breath tests because (1) the appellants failed to establish any causal connection between their refusal to give specimens and the fact that they were not given the written warnings before they refused the breath tests and (2) when the appellants did sign the written warnings, they reaffirmed their earlier decisions to refuse the breath test. *Rowland*, 983 S.W.2d at 60; *Jessup*, 935 S.W.2d at 511.

*O'Keefe v. State* is similar to *Rowland* and *Jessup*, except that in *O'Keefe*, the appellant refused to sign the written statutory warning form that was given to him after he had already refused to give a specimen upon receiving the oral warnings. 981 S.W.2d 872, 875 (Tex.App.-Houston [1st Dist.] 1998, no pet.). This Court held that the evidence supported the trial court's implied finding that the officer had complied with section 724.015. *Id.*

In *Lane v. State*, the officer read the statutory warnings to the appellant before requesting a breath sample, and the appellant agreed to submit to the breath test. 951 S.W.2d 242, 243 (Tex.App.-Austin 1997, no pet.). The officer never gave the appel-

2001, no pet.).

lant a printed version of the statutory warnings. *Id.* The appellate court held that the trial court properly admitted the results of the breath test into evidence because there was no evidence that the appellant did not understand the warnings or that his failure to receive the warnings in writing had any impact on his decision to take the breath test. *Id.* at 244.

The DPS contends that the previously discussed cases support the proposition that Jauregui was adequately warned according to the purpose of section 724.015. Jauregui contends that these cases are distinguishable from his own.[4] In the present case, the testimony reflects that, after Jauregui was arrested, Officer Carroll read to him the DIC–24 statutory warning form and his warnings. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). Officer Carroll did not provide Jauregui a written copy of the warnings during this first request for a breath specimen. Officer Carroll did, however, provide Jauregui a written copy of the warnings when he reached the police station.

Officer Carroll's testimony did not reflect whether he again administered the warnings orally to Jauregui at the station. However, Officer Carroll's offense report, admitted into evidence without objection,

reflects that, when he provided Jauregui a set of written warnings at the jail, Jauregui stated, "I understood this, I don't need to read it." Jauregui then refused for a second time to provide a breath specimen.

The difference between *Rowland* and *Jessup* and the present case is that Jauregui never signed the DIC–24 form, which would have indicated that he understood the warnings he had been given.[5] *See Rowland,* 983 S.W.2d at 60; *Jessup,* 935 S.W.2d at 510. However, the unobjected-to evidence shows that Jauregui refused to sign the DIC–24 form when asked to do so and instead stated that he understood the warning and "[didn't] need to read it." Thus, the evidence demonstrates that the purpose of section 724.015 had been fulfilled: Jauregui had been informed of the consequences of his failing to provide a breath specimen, and he had indicated that he understood those consequences. Moreover, Jauregui presented no evidence to show that he did not understand the warnings or that his failure to receive the warnings both in writing and verbally before a request for a breath specimen had any impact on his decision not to take the breath test. Thus, under the current case law, Jauregui was adequately given the section 724.015 warnings.

4. Jauregui also contends, as an alternative basis to affirm the ALJ's decision, that the DIC–24 is insufficient as a matter of law to comply with section 724.015 of the Texas Transportation Code because it does not warn a person "if the officer determines that the person is a resident without a license to operate a motor vehicle in this state, the department will deny to the person the issuance of a license . . ." as enumerated in subsection 5 of section 724.015. Courts have considered whether the DIC–24 substantially complies with the requirements set out in section 724.015 and have held that the DIC–24 does substantially comply with section 724.015. *See Moore v. State,* 981 S.W.2d 701, 705–07 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Shirley v. Tex. Dep't of Pub. Safety,* 974 S.W.2d 321, 323–24 (Tex.App.-San Antonio

1998, no pet.); *Martin v. Dep't of Pub. Safety,* 964 S.W.2d 772, 774–75 (Tex.App.-Austin 1998, no pet.); *Tex. Dep't of Pub. Safety v. Butler,* 960 S.W.2d 375, 376–78 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Moreover, the DIC–24 does warn a person that his or her license will be suspended or *denied* in the event that a person refuses to provide a specimen.

5. In *O'Keefe,* the appellant was only orally warned during the first request for a breath specimen, as in the present case. However, in contrast to the present case, during the second request for a breath specimen, a deputy gave the appellant the written warnings and again orally warned him.

Despite the fact that the plain language of the statute appears to require both written and oral warnings before a breath specimen is requested, courts have interpreted that statute to allow either oral or written warnings and not to require both. *See Rowland,* 983 S.W.2d at 60; *Jessup,* 935 S.W.2d at 510. Thus, we hold that the ALJ's finding was affected by an error of law and that the trial court erred in affirming it because Jauregui was properly warned under section 724.015.

Accordingly, we sustain the DPS's sole issue.

■ The DPS next contends that, because we have found in its favor regarding the statutory-warning issue, this Court should order the suspension of Jauregui's driver's license and determine whether any disputed facts regarding reasonable suspicion exist. The DPS asserts that, if this Court determines that facts regarding reasonable suspicion are in dispute, we should remand the case for an administrative hearing to obtain additional findings of fact and conclusions of law.

This Court is not the factfinder and, as such, should not engage in a review of the facts regarding issues not before it. Because the ALJ committed an error of law, the DPS is entitled to a reversal of the agency's order. The appropriate remedy for this error is not rendition, however. *Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors,* 24 S.W.3d 893, 902 (Tex.App.-Austin 2000), *rev'd on other grounds,* 92 S.W.3d 477 (Tex.2002). Instead, the cause must be remanded to the trial court with instructions to remand the cause to the agency for further consideration. *Id.* at 902.

### Conclusion

We reverse the judgment of the trial court and remand the cause to the trial court with instructions to remand the cause to the administrative court.